## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

**SECURITIES AND EXCHANGE
COMMISSION,**
**100 F Street, NE**
**Washington, DC 20549**

      **Plaintiff,**

        **v.**

**PETER STUART,**
**35 Parker Row, SW, Apt. 264**
**Washington, DC 20024,**

**OUTLIER DEVELOPMENT LLC (f/k/a
OAK TREE DEVELOPMENT LLC),**
**1255 Union Street NE, 7th Floor #16**
**Washington, DC 20002,**

**OUTLIER MULTIFAMILY ASSET
MANAGEMENT LLC (f/k/a OAKTREE
MULTIFAMILY ASSET MANAGEMENT,
LLC),**
**1255 Union Street NE, 7th Floor #16**
**Washington, DC 20002,**

**OUTLIER REALTY CAPITAL
MANAGEMENT, LLC,**
**1255 Union Street NE, 7th Floor #16**
**Washington, DC 20002,**

**OUTLIER OMAM HOLDCO, LLC,**
**1255 Union Street NE, 7th Floor #16**
**Washington, DC 20002,**

**OUTLIER OTD HOLDCO, LLC,**
**1255 Union Street NE, 7th Floor #16**
**Washington, DC 20002,**

**OUTLIER-RM VINE STREET LLC,**
**1255 Union Street NE, 7th Floor #16**
**Washington, DC 20002,**

**Case No.:  8:25-cv-00761**

**COMPLAINT**

**JURY TRIAL DEMANDED**

**OMAM MANAGER LLC,**
**1255 Union Street NE, 7th Floor #16**
**Washington, DC 20002,**

**OUTLIER MANAGER LLC,**
**1255 Union Street NE, 7th Floor #16**
**Washington, DC 20002,**

**OTD 1240 MOUNT OLIVET ROAD LLC,**
**1255 Union Street NE, 7th Floor #16**
**Washington, DC 20002,**

**OTD 2106-2108 VERMONT AVE LLC,**
**1255 Union Street NE, 7th Floor #16**
**Washington, DC 20002,**

**OTD 1126 9th ST NW LLC,**
**1255 Union Street NE, 7th Floor #16**
**Washington, DC 20002,**

**OMAM BEAMONS MILL LLC,**
**1255 Union Street NE, 7th Floor #16**
**Washington, DC 20002,**

**OMAM 2237 TAFT CIRCLE LLC,**
**1255 Union Street NE, 7th Floor #16**
**Washington, DC 20002,**

**OMAM 1971-1991 ROCHELLE AVE LLC,**
**1255 Union Street NE, 7th Floor #16**
**Washington, DC 20002,**

**OMAM 1002-1058 WOODSTOCK LN LLC,**
**1255 Union Street NE, 7th Floor #16**
**Washington, DC 20002,**

**OMAM 1625 W PEMBROKE LLC,**
**1255 Union Street NE, 7th Floor #16**
**Washington, DC 20002,**

**OMAM 1221 SCOTTS MANOR CT LLC,**
**1255 Union Street NE, 7th Floor #16**
**Washington, DC 20002,**

**OUTLIER NEWPOINTE LYNNBROOK LLC,**
**1255 Union Street NE, 7th Floor #16**
**Washington, DC 20002,**

**1101 N ARTHUR ASHE BLVD INVESTMENT LLC,**
**1255 Union Street NE, 7th Floor #16**
**Washington, DC 20002,**

**ORC 223 VINE ST LLC,**
**1255 Union Street NE, 7th Floor #16**
**Washington, DC 20002,**

**OUTLIER-ERI NEWPOINT LYNNBROOK LLC,**
**1255 Union Street NE, 7th Floor #16**
**Washington, DC 20002,**

**1101 N ARTHUR ASHE BLVD LLC,**
**1255 Union Street NE, 7th Floor #16**
**Washington, DC 20002,**

**ORC KP BOULEVARD LLC**
**1255 Union Street NE, 7th Floor #16**
**Washington, DC 20002,**

**PS KP 2019 (MT) LP,**
**1255 Union Street NE, 7th Floor #16**
**Washington, DC 20002,**

**OUTLIER PS-KP HOLDINGS GP LLC,**
**1255 Union Street NE, 7th Floor #16**
**Washington, DC 20002,**

**OUTLIER PS KP MANAGER, LLC,**
**1255 Union Street NE, 7th Floor #16**
**Washington, DC 20002,**

**and**

**OUTLIER PS-KP HOLDCO, LLC,**
**1255 Union Street NE, 7th Floor #16**
**Washington, DC 20002,**

**Defendants.**

## COMPLAINT

Plaintiff Securities and Exchange Commission ("Commission"), for its Complaint against

Defendant Peter Stuart ("Stuart") and the corporate entity defendants named above (the

"Corporate Defendants" or collectively with Stuart, "Defendants"), alleges as follows:

### SUMMARY

1.     From January 2018 through at least May 2023 (the "Relevant Period"),

Defendants raised at least $34.4 million from approximately 100 outside investors by selling

securities in companies created to invest in real estate. Defendants marketed each company as

investing in a particular property or properties located in Washington, DC, Maryland, or

Virginia. Investors that purchased the securities understood they were investing in specific real

estate projects. In reality, Defendants failed to manage the companies separately, and

commingled investors' money to cover shortfalls across the Corporate Defendants and related

entities.

2.     Stuart, along with three partners, each of whom contributed an equity investment,

formed the first Corporate Defendant in 2013. By 2020, Defendants had formed at least thirty

related companies. Collectively, the companies Stuart created operated as Outlier Realty Capital

("Outlier").

3.     Defendants provided prospective investors with Operating Agreements,

Subscription Agreements, and marketing presentations (commonly known as "Marketing

Decks") that collectively described each company as a separate and distinct investment vehicle

possessing its own members, designated capital, and corporate identity. Defendants represented

that monies investors paid would be used to fund the acquisition, development, and/or

management of a specific property or properties ("Property" or "Properties"). Moreover, the

Subscription Agreements and Marketing Decks for each company stated that the objective of the companies was to generate cash flows from a specific Property or Properties through receipt of rental payments and/or sales proceeds.

4.      Contrary to representations made by Defendants to investors, however, Stuart routinely directed and/or approved of the transfer and commingling of money between unrelated Corporate Defendants. This money came from investors and/or other funds, such as bank loans, associated with a specific Property (collectively, "Property-Specific Funds"). Over time, the Defendants came to rely on the transfer and commingling of Property-Specific Funds to cover expenses for Corporate Defendants and to pay Outlier overhead expenses, such as salaries. Stuart, on behalf of the Corporate Defendants, directed and approved the transfer and commingling of funds from investors, as well as proceeds from bank loans.

5.      Defendants' commingling of funds was unauthorized and undisclosed to investors. By their conduct, Defendants misled investors about the use of their money as well as the financial condition of the Corporate Defendants in which they invested. All told, Defendants commingled more than $50 million of Property-Specific Funds during the Relevant Period despite concerns raised by business partners, internal and external bookkeeping staff, and other insiders. Defendants also failed to disclose the true and complete facts to investors who expressed concerns about the location and use of their money.

6.      Defendants' commingling of Property-Specific Funds amounted to interest-free loans between Outlier entities and exposed investors to undisclosed investment risks that were incompatible with the business plans Defendants were purportedly implementing. Defendants' conduct also deprived investors of the time-value of their money and investment returns they should have received on a timely basis. Despite attempts to reconcile commingled funds, when

certain Defendants later sold seven of the twelve Properties, Defendants underpaid investors by approximately $1.47 million.

7.      By the conduct alleged in this Complaint, Defendants violated Sections 17(a)(2) and 17(a)(3) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)(2) and 77q(a)(3)]. Defendants obtained money or property to which they were not entitled by virtue of their violations. Unless restrained and enjoined, Defendants are reasonably likely to continue to violate the federal securities laws.

**DEFENDANTS[1]**

8.      Peter Stuart, age 38, is a resident of Washington, D.C., and a founder, co-founder, manager and/or general partner of each Corporate Defendant. During the Relevant Period, Stuart directed or controlled the business activities and financial accounts of the Corporate Defendants in connection with the transactions described herein.

9.      The "Property-Specific LLC" Defendants, described in detail and defined below, were created to offer investors the opportunity to invest in a specific investment Property. Each Property-Specific LLC had a "Class A" member and offered Class B membership interests to investors.

10.     The "Class A Member LLC" Defendants, also described in detail and defined below, were limited liability companies that formed and operated the Property-Specific LLCs.

11.     The "Manager LLC" Defendants, also described in detail and defined below, were limited liability companies responsible for the business and affairs of the Property-Specific

---

[1] The Corporate Defendants are named in this complaint as they are named in their operative legal documents. In some instances, common names are inconsistent across entities. For example, Outlier Newpointe Lynnbrook LLC and Outlier-ERI Newpoint Lynnbrook spell Newpoint[e] differently. In other instances, certain names are capitalized while others are not.

LLCs. Each Property-Specific LLC had a manager, either Stuart or one of the Manager LLCs. Stuart served as the manager of each of the Manager LLCs.

12.     During the Relevant Period, Defendants offered and sold Class B membership interests in twelve separate Property-Specific LLCs as summarized in Table 1 below:

TABLE 1[2]

| Property-Specific LLC | Underlying Property | Class A Member | Manager |
|---|---|---|---|
| OTD 1126 9th Street | 9th Street | OTD | Outlier Manager |
| 1101 N. Arthur Ashe Blvd Investment | Arthur Ashe | Outlier OTD Holdco | Outlier Manager |
| OMAM Beamons Mill | Beamons Mill | OMAM | OMAM Manager |
| OTD 1240 Mount Olivet Road | Mount Olivet | OTD | Peter Stuart |
| OMAM 1625 W Pembroke | Pembroke Avenue | OMAM | OMAM Manager |
| OMAM 1971-1991 Rochelle | Rochelle Drive | OMAM | OMAM Manager |
| OMAM 1221 Scotts Manor | Scotts Manor | Outlier Realty Capital Management | Outlier Manager |
| Outlier Newpointe Lynnbrook | Newpointe Properties | Outlier OMAM Holdco | Outlier Manager |
| OMAM 2237 Taft Circle | Pine Plaza | OMAM | OMAM Manager |
| OTD 2106-2108 Vermont | Vermont Avenue | OTD | Outlier Manager |
| ORC 223 Vine | 221-225 Vine Street | Outlier-RM Vine Street | Outlier Manager |
| OMAM 1002-1058 Woodstock Lane | Woodstock Lane | OMAM | OMAM Manager |

13.     Except as noted, each of the below Corporate Defendants is a Delaware limited liability company whose principal place of business during the Relevant Period was 7514 Wisconsin Avenue, Suite 500, Bethesda, Maryland 20184.

**I.     Class A Member LLC Defendants**

14.     Outlier Development LLC ("OTD"), formerly known as OAK TREE DEVELOPMENT LLC, was formed in October 2013. Initially, OTD had four partners,

---

[2] Table 1 incorporates terms defined below.

including Stuart, who were members of OTD. Each founding partner made initial capital investments in OTD. In January 2014, four additional non-voting members were admitted. As detailed in Table 1, OTD formed and operated as the sole Class A Member LLC of certain Property-Specific LLCs. Stuart managed and controlled OTD at all times.

15.    Outlier Multifamily Asset Management LLC ("OMAM"), formerly known as OAKTREE MULTIFAMILY ASSET MANAGEMENT, LLC was formed by the same four partners as OTD in September 2016. Each partner was a member of OMAM. In December 2016, OMAM added three additional members. As detailed in Table 1, OMAM formed and operated as the sole Class A Member LLC of certain Property-Specific LLCs. OMAM was managed by Stuart and one other individual and controlled by Stuart at all times.

16.    OUTLIER REALTY CAPITAL MANAGEMENT, LLC ("Outlier Realty Capital Management") was formed in May 2019. As detailed in Table 1, Outlier Realty Capital Management formed and operated as the sole Class A Member LLC of Property-Specific LLC, OMAM 1221 Scotts Manor Ct LLC. Through non-defendant Outlier (PS) Holdco LLC, Stuart was the sole member of Outlier Realty Capital Management, and through OUTLIER MANAGER LLC, Stuart managed and controlled Outlier Realty Capital Management, at all times.

17.    OUTLIER OMAM HOLDCO, LLC ("Outlier OMAM Holdco") was formed in July 2018. Outlier OMAM Holdco formed and operated as the sole Class A Member LLC of Property-Specific LLC, OUTLIER NEWPOINTE LYNNBROOK LLC. Stuart, through OUTLIER MANAGER LLC, managed and controlled Outlier OMAM Holdco at all times.

18.    Outlier OTD Holdco, LLC ("Outlier OTD Holdco") was formed in July 2019. Outlier OTD Holdco formed and operated as the sole Class A Member LLC of Property-Specific

LLC, 1101 N ARTHUR ASHE BLVD INVESTMENT LLC. Stuart, through OUTLIER MANAGER LLC, managed and controlled Outlier OTD Holdco at all times.

19.     Outlier-RM Vine Street LLC ("Outlier-RM Vine Street") was formed in July 2019. Outlier-RM Vine Street was the sole Class A Member LLC of Property-Specific LLC, ORC 223 VINE ST LLC. Stuart managed and controlled Outlier-RM Vine Street at all times.

## II.     Manager LLC Defendants

20.     OMAM MANAGER LLC ("OMAM Manager"), formed in September 2017, is the sole member of OMAM Manager. As detailed in Table 1, OMAM Manager was the manager for certain Property-Specific LLCs. Stuart managed and controlled OMAM Manager at all times.

21.     OUTLIER MANAGER LLC ("Outlier Manager") was formed in July 2019. As detailed in Table 1, Outlier Manager was the named manager for certain Property-Specific LLCs, Outlier OTD Holdco, Outlier OMAM Holdco, and Outlier-ERI Newpoint Lynnbrook LLC. Stuart was the sole member, through Outlier Realty Capital Management, of Outlier Manager and managed and controlled it at all times.

## III.     Property-Specific LLC Defendants

22.     OTD 1240 MOUNT OLIVET ROAD LLC ("OTD 1240 Mount Olivet Road"), formed in March 2017, issued non-voting and non-management Class B membership interests to raise funds for investment in the real property located at 1240 Mount Olivet Road, NE, Washington, DC 20002 ("Mount Olivet"). Stuart managed and controlled OTD 1240 Mount Olivet Road at all times.

23.     OTD 2106-2108 VERMONT AVE LLC ("OTD 2106-2108 Vermont"), formed in November 2017, issued non-voting and non-management Class B membership interests to raise funds for investment in 2106-2108 Vermont LLC, which in turn owned, financed, operated,

developed and/or otherwise invested in the real property at 2106-2108 Vermont Avenue, NW, Washington, DC 20001 ("Vermont Avenue"). Stuart, initially through OTD, and then as of March 2019, through Outlier Manager, managed and controlled OTD 2106- 2108 Vermont Ave at all times.

24.     OTD 1126 9th St NW LLC ("OTD 1129 9th Street"), formed in January 2015, issued non-voting and non-management Class B membership interests to raise funds for investment in 1126 9th St NW LLC, which in turn owned, financed, operated, developed and/or otherwise invested in the real property at 1126 9th St NW, Washington, DC 20001 ("9th Street"). Stuart, initially through OTD, and then as of March 2019, through Outlier Manager, managed and controlled OTD 1126 9th Street at all times.

25.     OMAM Beamons Mill LLC ("OMAM Beamons Mill"), formed in May 2019, issued non-voting and non-management Class B membership interests to raise funds for investment in Beamons Mill Property LLC, which in turn owned, financed, operated, developed and/or otherwise invested in the real property at 305 Beamons Mill Trail, Suffolk, Virginia 23434 ("Beamons Mill"). Stuart, through OMAM Manager, managed and controlled OMAM Beamons Mill LLC at all times.

26.     OMAM 2237 Taft Circle LLC ("OMAM 2237 Taft Circle"), formed in August 2018, issued non-voting and non-management Class B membership interests to raise funds for investment in OMAM 2237 Taft Circle, which in turn owned, financed, operated, developed and/or otherwise invested in the real property at 2237 Taft Circle, Winchester, Virginia 22601 ("Pine Plaza"). Stuart, through OMAM Manager, managed and controlled OMAM 2237 Taft Circle at all times.

27.     OMAM 1971-1991 Rochelle Ave LLC ("OMAM 1971-1991 Rochelle"), formed in October 2018, issued non-voting and non-management Class B membership interests to raise funds for investment in 1971-1991 Rochelle Ave Property LLC, which in turn owned, financed, operated, developed and/or otherwise invested in the real property at 1971-1994 Rochelle Drive, District Heights, Maryland 20747 ("Rochelle Drive"). Stuart, through OMAM Manager, managed and controlled OMAM 2237 Taft Circle at all times.

28.     OMAM 1002-1058 Woodstock Ln LLC ("OMAM 1002-1058 Woodstock Lane"), formed in September 2018, issued non-voting and non-management Class B membership interests to raise funds for investment in 1002-1058 Woodstock Ln Property LLC, which in turn owned, financed, operated, developed and/or otherwise invested in the real property at 1002-1058 Woodstock Lane, Winchester, Virginia 22601 ("Woodstock Lane"). Stuart, through OMAM Manager, managed and controlled OMAM 1002-1058 Woodstock Ln at all times.

29.     OMAM 1625 W PEMBROKE LLC ("OMAM 1625 W Pembroke"), formed in September 2018, issued non-voting and non-management Class B membership interests to raise funds for investment in 1625 W Pembroke Property LLC, which in turn owned, financed, operated, developed and/or otherwise invested in the real property at 1625 W Pembroke Avenue, Hampton, Virginia 23661 ("Pembroke Avenue"). Stuart, through OMAM Manager, managed and controlled OMAM 1625 W Pembroke at all times.

30.     OMAM 1221 Scotts Manor Ct LLC ("OMAM 1221 Scotts Manor"), formed in September 2018, issued non-voting and non-management Class B membership interests to raise funds for investment in 1221 Scotts Manor Ct Property LLC, which in turn owned, financed, operated, developed and/or otherwise invested in the real property at 1221 Scotts Manor Court,

Odenton, Maryland 21113 ("Scotts Manor"). Stuart, through Outlier Manager, managed and controlled OMAM 1221 Scotts Manor at all times.

31.    OUTLIER NEWPOINTE LYNNBROOK LLC ("Outlier Newpointe Lynnbrook"), formed in July 2019, issued non-voting and non-management Class B membership interests to raise funds for investment in Bound Brook Property LLC and Seawall Property LLC, which in turn owned, financed, operated, developed and/or otherwise invested in the real properties at 5500 Bound Brook Court, Virginia Beach, Virginia 23462 and 5510 Seawall Court, Virginia Beach, Virginia 23462, respectively (collectively, the "Newpointe Properties"). Stuart, through Outlier Manager, managed and controlled Outlier Newpointe Lynnbrook at all times. On February 14, 2020, Outlier Newpointe Lynbrook transferred 100% of its interest in Bound Brook Property LLC and Seawall Property LLC to Outlier-ERI Newpoint Lynnbrook LLC.

32.    1101 N ARTHUR ASHE BLVD INVESTMENT LLC ("1101 N. Arthur Ashe Blvd Investment"), formed in October 2019, issued non-voting and non-management Class B membership interests to raise funds for investment in 1101 N ARTHUR ASHE BLVD LLC, which in turn owned, financed, operated, developed and/or otherwise invested in the real property located at 1101 N. Arthur Ashe Boulevard, Richmond, Virginia ("Arthur Ashe Property"). Stuart, through Outlier Manager, managed and controlled 1101 N. Arthur Ashe Blvd Investment at all times.

33.    ORC 223 VINE ST LLC ("ORC 223 Vine"), formed in July 2019, issued non-voting and non-management Class B membership interests to raise funds for investment in 221 VINE ST NW LLC, which in turn owned, financed, operated, developed and/or otherwise invested in the real property located at 221-225 Vine Street, NW Washington, DC ("Vine Street"). Stuart, through Outlier Manager, managed and controlled ORC 223 Vine at all times.

## IV.    Additional Corporate Defendants

34.    The "Additional Corporate Defendants," described in detail and defined below, were seven other entities Stuart created to sell and manage investments in specific Properties. Although the Additional Corporate Defendants were not incorporated in the same manner as the Property-Specific LLCs, Class A Member LLCs, and Manager LLCs, they served similar roles, offering and managing investment interests in specific Properties.

35.    Outlier-ERI Newpoint Lynnbrook LLC ("Outlier-ERI Newpoint Lynnbrook"), formed in July 2019, sold investor memberships to investors to raise funds for investments in the Newpointe Properties. Outlier Newpointe Lynnbrook was the "Sponsor Member" of Outlier-ERI Newpoint Lynnbrook. Stuart, through Outlier Manager LLC, managed Outlier-ERI Newpoint Lynbrook LLC at all times.

36.    1101 N ARTHUR ASHE BLVD LLC ("1101 N. Arthur Ashe Blvd LLC"), formed in October 2019, owned, financed, operated, developed and/or otherwise invested in the Arthur Ashe Property. In June 2022, through an amended and restated limited liability company agreement, 1101 N. Arthur Ashe Blvd LLC admitted four investors as members, including ORC KP BOULEVARD LLC. The Operating Agreement, Subscription Agreements, and Marketing Deck provided by Stuart and certain Corporate Defendants to investors indicated that 1101 N. Arthur Ashe Blvd LLC would use investors' capital contributions to develop the Arthur Ashe Property. Stuart, through Outlier Manager, managed and controlled 1101 N. Arthur Ashe Blvd LLC at all times.

37.    ORC KP BOULEVARD LLC ("ORC KP Boulevard"), formed in October 2020, was a member and held an ownership interest in 1101 N. Arthur Ashe Blvd LLC. ORC KP Boulevard, managed and operated 1101 N. Arthur Ashe Blvd LLC in a manner substantially the

same as the Class A Member LLCs operated the Property-Specific LLCs. Stuart was the sole member and manager of ORC KP Boulevard at all times.

38.     PS KP 2019 (MT) LP was a Delaware limited partnership formed in February 2019 with its principal place of business in Bethesda, Maryland. Stuart created PS KP 2019 (MT) LP to facilitate an individual investor's ("Limited Partner A's") investment through the purchase of a limited partnership in PS KP 2019 (MT) LP. Stuart, PS KP 2019 (MT) LP, and certain other Corporate Defendants represented that Limited Partner A's investments would be used for specific Properties. Stuart, through Outlier PS-KP Manager LLC, managed and controlled PS KP 2019 (MT) LP at all times.

39.     OUTLIER PS-KP HOLDINGS GP LLC ("Outlier PS-KP Holdings GP"), formed in February 2019, is the general partner of and had the exclusive right to manage PS KP 2019 (MT) LP. As such, Outlier PS-KP Holdings GP, was similar to a Class A Member LLC. Stuart was the sole member of Outlier PS-KP Holdings GP and managed and controlled Outlier PS-KP Holdings GP through Outlier PS-KP Manager LLC at all times.

40.     Outlier PS KP Manager, LLC ("Outlier PS KP Manager"), formed in February 2019, is owned by Stuart and is the non-member manager of Outlier PS-KP 2019 (MT) LP. Stuart managed and controlled Outlier PS KP Manager at all times.

41.     OUTLIER PS-KP HOLDCO, LLC ("Outlier PS-KP Holdco"), formed in February 2019, was created and is owned by PS KP 2019 (MT) LP. Stuart through Outlier PS KP Manager managed and controlled Outlier PS-KP Holdco at all times

**JURISDICTION AND VENUE**

42.     The Commission brings this action pursuant to the enforcement authority conferred upon it by Sections 20(b) and (d) of the Securities Act [15 U.S.C. § 77t(b) and (d)].

43.    This Court has jurisdiction over this action pursuant to Sections 20(d) and 22(a) of the Securities Act [15 U.S.C. §§ 77t(d) and 77v(a)].

44.    Defendants, directly or indirectly, have made use of the means or instruments of transportation or communication in interstate commerce, or of a means or instrumentality of interstate commerce, or of the mails, in connection with the transactions, acts, practices, and courses of business alleged in this Complaint. Among other things, Defendants, all of which are based in Bethesda, Maryland, bought and/or sold investment properties located in Washington, DC, Virginia, and Maryland. Stuart and others solicited investors through in-person presentations, telephone, and email in Washington, DC, Maryland, and Virginia. Investors located in Washington, DC, Maryland, and Virginia paid money in the form of checks, wire transfers, and electronic funds transfers to effectuate the purchase and sale of securities from Defendants and others.

45.    Venue lies in this District pursuant to Section 22(a) of the Securities Act [15 U.S.C. §77v(a)] because Defendants transact business here, including certain of the acts complained of in this Complaint, because Defendants maintained a principal place of business in Bethesda, Maryland during the Relevant Period, and because the offer or sale of the subject securities took place here. Numerous affected investors are also located in Montgomery County, Maryland.

46.    This action is timely filed. Defendants and the Commission executed tolling agreements that collectively tolled the running of any applicable statute of limitation deadline during the following periods: April 17, 2023 – October 17, 2023; October 18, 2023 – April 18, 2024; June 21, 2024 – September 21, 2024; September 22, 2024 – November 22, 2024;

November 23, 2024 – January 7, 2025; January 8, 2025 – February 7, 2025; and February 8, 2025 – March 10, 2025.

## FACTS

**I.    Defendants Offered and Sold Real Estate Investment Contracts**

47.    Stuart and three partners founded OTD in 2013. In 2016, Stuart and the same three partners founded OMAM. OTD or OMAM served as the Class A Member LLCs for eight of the Property Specific LLCs and were responsible for much of the business activities of the affiliated businesses that ultimately became known as Outlier.

48.    During the Relevant Period, Outlier engaged in several lines of business: (1) developing apartment buildings, other residential properties, and commercial properties ("Development Properties"), (2) operating existing multi-family housing facilities ("Value-Add Properties"), and (3) operating a real estate investment trust ("REIT"). Initially, OTD managed the Development Properties, and OMAM managed the Value-Add Properties and advised the REIT.

49.    Each Development and Value-Add Property was held by a Property-Specific LLC. Each Property-Specific LLC had an Operating Agreement that stated that the purpose of the Property-Specific LLC was to own, finance, operate, develop, improve and/or otherwise invest in a specific Property.

50.    Property-Specific LLCs funded the acquisition and development of Properties by soliciting outside investments and by obtaining bank loans for the specific Properties. Investors typically provided 20-30% of the Property-Specific Funds for each Property-Specific LLC. The remaining Property-Specific Funds came from bank loans. Each Property-Specific LLC maintained its own bank accounts.

51.     Prospective investors could invest in a specific Property by purchasing memberships in the form of "Class B unit interests" from Property-Specific LLCs. Class B investors were passive, non-voting investors with no role in management of the Property-Specific LLCs. The memberships Class B investors purchased were real estate investment contracts.

52.     For a Development Property, Class B investors were to receive a return upon the completion or sale of the Property. For a Value-Add Property or a completed Development Property, Class B investors were also to receive periodic distributions from the Property-Specific LLC based on available operating cash flows from the project. The Class B investors were not entitled to voting or management rights.

53.     According to the Property-Specific LLCs' Operating Agreements, the Property-Specific LLCs were responsible for receiving funds from Class B investors who wanted to invest in their respective Properties.

54.     Each Property-Specific LLC was formed and operated by a Class A member or members. The Class A members were either OTD or OMAM, initially, or one of the other Class A Member LLCs that Stuart later created and operated. Class A Member LLCs had voting, management, and other rights pursuant to the Operating Agreements of each Property-Specific LLC, including the right to replace the Manager of the Property-Specific LLC. Class A Member LLCs were also entitled to various fees.

55.     Stuart, either directly, or through a Manager LLC served as manager of the Property-Specific LLCs. As manager, Stuart's duties included handling the day-to-day business of each Property-Specific LLC and admitting new Class B investors. Thus, Stuart controlled the business, operations, finances, and fundraising activities of each Property-Specific LLC,

including the transfers of funds. The manager of each Property-Specific LLC was entitled to fees.

56.     In addition to the Property-Specific LLCs, Defendants offered and sold membership interests in Outlier-ERI Newpoint Lynnbrook, 1101 N. Arthur Ashe Blvd LLC, and PS KP 2019 (MT) LP (collectively, the "Additional Securities Issuing Defendants"). These interests were similar to the Class B memberships sold by the Property-Specific LLCs in that they were offered as real estate investment contracts in specific Properties and in practice offered investors limited management rights.

57.     The membership interests that Defendants offered and sold were "securities" within the meaning of Section 2(a)(1) of the Securities Act [15 U.S.C. §77b(a)(1)]. Investors paid money to purchase equity interests in a common enterprise with a reasonable expectation of profits based on the efforts of the Defendants.

58.     Prior to each investor investing in a particular Property-Specific LLC, Defendants provided the investor with an Operating Agreement that described the "Purpose" of the operating company solely with reference to a particular Property. Similarly, investors in the Additional Securities Issuing Defendants received Operating Agreements or Partnership Agreements that stated the purpose of the entity was to invest in specific Properties.

59.     Each Class B investor entered into a Subscription Agreement with the relevant Property-Specific LLC. Each Subscription Agreement incorporated the Operating Agreement for the Property-Specific LLC and the specific underlying Property. Stuart signed each Subscription Agreement on behalf of the relevant Property-Specific LLC.

60.     Most investors in Property-Specific LLCs and Additional Securities Issuing Defendants also received a Marketing Deck. The Marketing Decks described the "sources and

uses" of investors' funds and stated that funds would be used for the purchase and renovation of a particular Property or Properties.

61.     Stuart reviewed and approved the content of the Subscription Agreements, Operating Agreements, Partnership Agreements, and Marketing Decks. The representations made in these agreements about the intended use of funds was material information. Stuart and the Corporate Defendants were at least negligent in providing investors with specific information on the "sources and uses" of funds while failing to disclose to investors that their investments and other Property-Specific Funds would be used for other, unrelated Properties controlled by the Defendants.

62.     Nothing in the Operating Agreements, Subscription Agreements, Marketing Decks, or Partnership Agreements authorized Stuart to use funds from Property-Specific LLCs for other, unrelated Properties or the expenses of unrelated Corporate Defendants.

63.     Defendants did not inform Class B investors that their investments would be used to pay expenses for other Properties and unrelated Outlier entities. To the contrary, Defendants represented to investors that their investments in a particular Property-Specific LLC would be used to operate only that Property-Specific LLC, whose main purpose was the acquisition, management, and/or development of a specific Property. Similarly, Defendants did not disclose to investors in the Additional Securities Issuing Defendants that their investments could be commingled and used to support other Corporate Defendants.

64.     For example, the Subscription Agreement for OMAM 2237 Taft Circle incorporated an Operating Agreement that laid out investment objectives concerning the Pine Plaza Property. The Marketing Deck, which Stuart reviewed, approved, and provided to investors, described a business plan for Pine Plaza's renovation, upgrades, professional

management, and corresponding rent increases. There was no reference to using monies from Class B investors to finance expenses for other, unrelated Property-Specific LLCs or other, unrelated Outlier companies.

65.    Investors and potential investors in the Property-Specific LLCs and Additional Securities Issuing Defendants considered Defendants' representations about the use of their investment funds important in considering the securities offerings.

## II.    Defendants Misappropriated and Commingled Property-Specific Funds

66.    Beginning no later than 2017, certain Defendants experienced severe and persistent liquidity problems due to insufficient capital and ballooning expenses for hiring, office expansions, consulting, and travel. The fees that the Manager LLCs and Class A Member LLCs earned were insufficient and/or not earned in time to pay general corporate expenses when they were due. Additionally, the REIT failed to attract investors and generate revenue necessary to support OMAM's operations, which accounted for approximately half of Outlier's assets and liabilities. Stuart attempted to solve the liquidity issue by raising capital from OMAM's existing Class A partners in 2017, and again in 2018, but was unsuccessful.

67.    Beginning no later than January 2018, Stuart directed the use of fees owed to and/or earned by Class A Member LLCs to pay the expenses of certain Corporate Defendants. The monies that Stuart used to pay these fees came from Class B investors' subscription payments, bank-provided lines of credit, and other bank loans intended for the acquisition or construction of a particular Property. The fees, however, were insufficient to cover the expenses of the Corporate Defendants, and Stuart used monies in excess of fees earned or owed. In fact, Defendants routinely transferred and commingled funds, including from Class B investors of

different Property-Specific LLCs, to finance other Property-Specific LLCs and other Corporate Defendants, including OMAM and OTD.

68.     This practice of commingling funds among the various Corporate Defendants created what became known within Outlier as "due to/due from" balances on the books and records of different Outlier corporate entities. Recognizing that the Property-Specific LLCs and the Additional Securities Issuing Defendants were standalone investment entities to which the Property-Specific Funds belonged, Stuart attempted to track the flow of funds and directed entries be made in Outlier's accounting software.

69.     Outlier also hired an accountant ("Accountant A") to handle all the finances of the Outlier enterprises, including tracking and reconciling all inter-company transfers. Accountant A worked with Outlier's bookkeepers, created due to/due from matrices reflecting outstanding balances at each Outlier entity and to whom each entity owed money, and provided Stuart with frequent financial updates and reports. Stuart also had weekly cash flow meetings with Accountant A during which he was routinely apprised of Outlier's lack of liquidity and inability to meet expenses without transferring and commingling money from the Properties.

70.     Beginning in 2018, Defendants used a $2 million line of credit that OTD 1240 Mount Olivet Road obtained from a bank to develop the Mount Olivet Property to instead pay closing costs and vendors for other Properties and corporate-level expenses such as payroll. By the end of September 2018, the "due to/due from" matrix created by Accountant A and outside bookkeepers showed that OTD 1240 Mount Olivet Road had a net receivable of more than $2 million and that two other Property-Specific LLCs had net receivables of approximately $200,000 and $600,000 respectively. A few months later, one of Outlier's construction managers repeatedly told Stuart that these Properties had multiple critical past due invoices. The investors,

however, remained in the dark about Outlier's commingling of funds, deepening financial struggles, and inability to pay Property-related expenses.

71.     As 2018 progressed, Outlier employees expressed concerns about Outlier's overall financial situation. On September 27, 2018, Outlier's development manager for certain properties emailed Stuart, warning: "We have now reached the point that if critical outstanding and past due invoices are not paid, our ability to continue moving forward with these projects is in jeopardy." Others at Outlier also expressed concerns to Stuart about Outlier entities or Properties lacking sufficient cash to pay their expenses.

72.     Meanwhile, Stuart sought to restrict access to Outlier's financial information, including from his own partners and other Outlier employees. On October 5, 2018, Stuart instructed Accountant A and the outside bookkeepers that "without prior WRITTEN consent by me, NO ONE else at [O]utlier or outside of [O]utlier (this includes investors, partners, employees, etc.) should be given (either written or oral) ANY financial information."

73.     Defendants continued to misuse and commingle Property-Specific Funds throughout 2018 and into 2019. As a bookkeeper wrote to Stuart on February 22, 2019:

> The pattern I've generally noticed is that when a project gets
> capital, it immediately goes to whichever entity has bills that are
> extremely outstanding, or used to fund the corporate entities. I
> know the perfect world would have the dev[elopment] and
> acq[uisition] fees cover the corporate expenses, but that isn't the
> case.

74.     In August 2019, Stuart, acting on behalf of the Corporate Defendants identified below, used money Class B investors invested in Outlier Newpointe Lynnbrook to pay expenses unrelated to the Newpointe Properties. Between August 12 and August 30, 2019, Outlier Newpointe Lynnbrook raised $1,152,000 from 10 equity investors. During the same period,

19

without the knowledge or consent of the Class B investors, Stuart and certain Corporate Defendants transferred $650,155 from Outlier Newpointe to other Outlier entities. For example:

    a.    On August 12, 2019, Outlier Newpointe Lynnbrook transferred $56,000 to non-defendant Outlier Development Management, Inc. ("OTDM"), a pass-through entity responsible for payroll.

    b.    On August 13, 2019, Outlier Newpointe Lynnbrook transferred $124,000 to OTD, which subsequently transferred the same amount to OTD 1240 Mount Olivet Road to pay construction expenses for the Mount Olivet Property.

    c.    On August 22, 2019, Outlier Newpointe Lynnbrook transferred $180,511 to OMAM and OTD, which subsequently transferred funds to OTD 1240 Mount Olivet Road to pay its construction manager.

    d.    August 30, 2019, Outlier Newpointe Lynnbrook transferred $25,000 to ORC 223 Vine through OMAM and OTD to pay a hard money lender related to the Vine Street Property.

75.    Defendants' transfers and commingling of Property-Specific Funds were not limited to Outlier Newpointe Lynnbrook.

    a.    In January 2019, two Class B investors invested $325,000 in OTD 1126 9th Street. Later that month, $289,555 was transferred from OTD 1126 9th Street to six unrelated Outlier entities and used for purposes unrelated to the 9th Street Property, including payroll, operating expenses of OTD 2106-2108 Vermont, and OMAM's payment to a hard money lender for an unrelated Property.

b.      In July 2019, Outlier PS-KP Holdco received $672,500 from four investors for investment in Outlier Newpointe Lynnbrook and ORC 223 Vine Street. Outlier PS-KP Holdco transferred $496,000 to OMAM which subsequently used the funds to pay a lender of the Beamons Mill Property.

c.      In February 2020, $2,009,933 that a private equity fund invested in Outlier Newpointe Lynnbrook was used to pay expenses unrelated to the Newpointe Properties.

d.      On February 17, 2021, 1101 N. Arthur Ashe Blvd Investment received $500,000 from a Class B investor. On February 26, 2021, $499,000 was transferred to OTD. On the same day, OTD transferred $545,377 to OTD 1126 9th Street, which paid the same amount to a contractor working on the 9th Street Property.

e.      On November 21, 2022, OTD 1240 Mount Olivet Road received $100,000 from a Class B investor. On November 23, 2022, $60,000 was transferred from OTD 1240 Mount Olivet Road to OTDM. Subsequently, on the same day, $60,000 was transferred from OTDM to Outlier PS-KP Holdco and commingled with $440,023 in other funds. Those commingled funds were used to pay distributions to Outlier Newpointe Lynnbrook investors.

76.     As set forth in Table 2 below, Defendants made more than $50 million in gross transfers of Property-Specific Funds from Property-Specific LLCs during the Relevant Period.

**TABLE 2**

| Property-Specific LLC | Transfers |
|---|---|
| OTD 1126 9th Street | $7,478,444 |
| 1101 N. Arthur Ashe Blvd Investment | $7,892,797 |
| OMAM Beamons Mill | $1,987,723 |
| OTD 1240 Mount Olivet Road | $4,522,031 |
| OMAM 1625 W Pembroke | $1,359,095 |
| OMAM 1971-1991 Rochelle | $2,077,038 |
| OMAM 1221 Scotts Manor | $2,888,817 |
| Outlier Newpointe Lynnbrook | $11,792,627 |
| OMAM 2237 Taft Circle | $2,352,022 |
| OTD 2106-2108 Vermont | $3,061,128 |
| ORC 223 Vine | $1,617,456 |
| OMAM 1002-1058 Woodstock Lane | $3,067,959 |
| **Total** | **$50,097,136** |

77.     Defendants' inter-company transfers of Property-Specific Funds had significant impacts on investors and their investments. Defendants' practice of diverting funds from Property-Specific LLCs to other accounts resulted in them being unable to make timely distributions to Class B investors. Defendants' misuse of Property-Specific Funds, including equity from investors, also resulted in project delays and significantly delinquent payments to general contractors and other vendors who were developing or renovating the Properties. Defendants resorted to taking out short-term hard money loans that subjected the Properties and investors to additional undisclosed costs and risks.

78.     Defendants' commingling of funds also impacted Property-Specific LLCs' acquisition of specific Properties. In at least two instances, Stuart needed hard money loans to acquire Properties for which the equity had already been raised but was unavailable because Stuart had directed it be used to pay other, unrelated Outlier expenses.

79.     Defendants' practice of transferring money belonging to the Property-Specific LLCs and the Additional Securities Issuing Defendants to pay expenses of other Corporate Defendants operated as a fraud or deceit upon investors.

80.     Each of the Corporate Defendants responsible for management: ORC KP Boulevard, Outlier PS-KP Holdings GP, Outlier PS KP Manager, and Outlier PS-KP Holdco (collectively, the "Additional Management Defendants"), the Class A Member LLCs, and the Manager LLCs; either made the transfers of Property-Specific Funds or allowed the transfers to be made. And each of these Defendants received fees for their management services.

81.     Moreover, each of the Corporate Defendants was responsible for misrepresentations and material omissions to investors regarding the use of Property-Specific Funds. The Property-Specific LLCs and Additional Securities Issuing Defendants offered investments based on misrepresentations and omissions in the Operating Agreements, Subscription Agreements, Partnership Agreements, and/or Marketing Decks. The Class A Member LLCs, Manager LLCs, and remaining Additional Management Defendants, were responsible for the business and activities of the Property-Specific LLCs and Additional Securities Issuing Defendants, including the creation and dissemination of the misleading documents.

### III.    Stuart Disregarded Warnings from Insiders and Employees

82.     Most investors were unaware of Defendants' practice of commingling investor and Property-Specific Funds due to Defendants' lack of transparency. In the few instances in which an investor did ask questions, Stuart deflected and avoided providing directly responsive information. For example, in January 2019, two investors told Stuart that they wanted to be sure their money was used and deposited directly in the specific Properties in which they invested.

Although Defendants had already transferred the two investors' money to unrelated Properties to pay unrelated expenses, Stuart did not tell them about the transfers. Instead, Stuart offered to generate a report showing the investors their interest in the Properties.

83.    While investors were not informed about Outlier's commingling of funds, insiders confronted Stuart, including one who "told him to stop" doing it. For example, on May 23, 2019, after previously confronting Stuart and not seeing him address any of the issues, a partner and investor who had been working at Outlier resigned and sent the following email:

> As you know, in light of my recent awareness that the 9th Street project is formally being managed out of ORC (of which I am a partner) and not OTDM, and that this project is now being borrowed against, in part to cover corporate shortfalls [–] which I feel is mismanagement of investor monies – I have consulted my lawyer and gotten advice.
>
> As a result, I have decided . . . to leave Outlier Partners until such a time as this misappropriation of funds has been rectified, and all the projects "made whole/trued up" . . . .
>
> My decision is the result of . . . : (i) Misappropriation of client funds . . . . (ii) Materially Insufficient Disclosure on Capital Raising Documents . . . .

84.    Furthermore, on June 5, 2019, Accountant A told Stuart that the entire Outlier enterprise was incurring "losses . . . at about [$]235K per month in aggregate." As of July 2019, several of the Corporate Defendants owed the Property-Specific LLCs $4.9 million. On August 6, 2019, Accountant A informed Stuart in an email that the Outlier corporate entities borrowed and currently owed the "investments $3.85 million." Then, in or around September 2019, a fellow Outlier Partner "went to Peter [Stuart] and told him he had to stop . . . . [R]obbing Peter to pay Paul."

85.    On December 18, 2019, Stuart emailed his executive assistant and an Outlier employee, "I've been financially irresponsible at many times and not diligent in running the

business in an organized or efficient way." Notwithstanding Stuart's recognition that he had been financially irresponsible, Stuart continued to conduct offerings and commingle investor funds.

86.     On December 24, 2019, Outlier's Vice President of Operations emailed Stuart, "Assuming we are successful raising the full $2M from [investors] – we are going to have $8 to $9 million of corporate debt. The only way we get ourselves out of this and pay the debt down is to sell assets, and likely sell literally everything." On January 3, 2020, Stuart learned that the company had incurred cumulative losses of $7.9 million. Just days after learning this, however, Stuart told a skeptical current investor, "Outlier is well capitalized and cash flow positive and in good shape to continue moving forward."

87.     In January 2020, Accountant A was terminated after he and an outside bookkeeper refused to obey Stuart's direction to transfer nearly $3 million of a private equity fund's investment. At the same time, Defendants terminated the software license for the accounting system which Accountant A had attempted to use to track and report on the commingled funds and corporate losses. As a result, the records from the accounting system were lost.

## IV.    Defendants Failed to Fully Pay Investors When Outlier Sold Seven Properties in 2022 and 2023

88.     In 2022 and 2023, Outlier sold seven of the twelve Properties owned or held by the Property-Specific LLCs. At the same time, Defendants attempted to reconcile the due to/due from balances among the various Outlier entities. However, Defendants did not return the full amounts owed to Class B investors. Although Defendants returned approximately $27.4 million to Class B investors who had made equity investments between 2018 and 2023, they failed to return approximately $1.47 million.

**CLAIM**
**Violation of Sections 17(a)(2) and 17(a)(3) of the Securities Act**
**(Against All Defendants)**

89.     The Commission repeats and incorporates by reference the allegations in paragraphs 1 through 88 above as if set forth fully herein.

90.     By engaging in the conduct described above, Defendants, in the offer or sale of securities, and by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly: (1) while acting negligently, obtained money or property by means of untrue statements of a material fact or by omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (2) while acting negligently, engaged in transactions, practices, or courses of business which operated or would have operated as a fraud or deceit on purchasers of Defendants' securities.

91.     By engaging in the foregoing conduct, Defendants violated, and, unless enjoined, are reasonably likely to continue to violate, Sections 17(a)(2) and 17(a)(3) of the Securities Act, [15 U.S.C. § 77q(a)(2) and (3)].

**PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests the Court find Defendants committed the violations charged, and enter a Final Judgment:

**I.**

Permanently restraining and enjoining Defendants from violating Sections 17(a)(2) and 17(a)(3) of the Securities Act of 1933 [15 U.S.C. § 77q(a)(2) and (3)];

**II.**

Restraining and enjoining Stuart, for a period of five-years following the date of entry of a Final Judgment, from participating in the issuance, purchase, offer, or sale of any security,

26

including through entities he controls, other than those for his own personal account, pursuant to Section 20(b) of the Securities Act [15 U.S.C. §77t(b)] and Section 21(d)(1) and (5) of the Exchange Act [15 U.S.C. §78u(d)(1) and (5)];

III.

Enjoining Stuart for a period of five-years following the date of entry of a Final Judgment, from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. §78l] or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. §78o(d)], pursuant to Section 20(e) of the Securities Act [15 U.S.C. §77t(e)];

IV.

Ordering Stuart, the Class A Member LLC Defendants, the Manager LLC Defendants, the Additional Management Defendants, and PS KP 2019 (MT) LP, pursuant to Sections 21(d)(3), (5) and (7) of the Exchange Act [15 U.S.C. §78u(d)(3), (5) and (7)], on a joint and several basis, to disgorge any ill-gotten gains resulting from the acts or courses of conduct alleged in this Complaint, plus prejudgment interest thereon;

V.

Ordering Stuart and, on a joint and several basis with each other, the Class A Member LLC Defendants, the Manager LLC Defendants, the Additional Management Defendants, and PS KP 2019 (MT) LP to pay civil money penalties, pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)]; and

VI.

Granting such other and further relief as the Court determines to be necessary and appropriate.

## JURY TRIAL DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the Commission hereby

demands a trial by jury.

DATED: March 7, 2025

                                        Respectfully submitted,

                                        SECURITIES AND EXCHANGE
                                        COMMISSION

                                        By:   /s/Charlie Divine
                                              Charlie Divine, Trial Counsel
                                              Securities and Exchange Commission
                                              100 F Street NE
                                              Washington, DC 20549
                                              Telephone: (202) 551-6673
                                              Email: divinec@sec.gov
                                              Attorney for Plaintiff

Of Counsel:
Christina Adams
Securities and Exchange Commission
100 F Street NE
Washington, DC 20549